

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00056-CR

CHARLES WADE BRIGGS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-21-28287

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

# MEMORANDUM OPINION

On the night of July 21, 2017, at least three men forced their way into the home of Gina and Johnnie Jones. While one of the men subdued Gina, the other men subdued Johnnie and shot him at close range in the back of his head. As a result, a Fannin County jury convicted Charles Wade Briggs of attempted[1] murder,[2] burglary of a habitation with intent to commit aggravated assault,[3] and engaging in organized criminal activity.[4] In this appeal,[5] Briggs challenges his conviction of attempted murder. He contends (1) that there was insufficient evidence to support the jury's verdict that he committed attempted murder, (2) that the jury charge on party liability was erroneous because it did not require the jury to find all elements of attempted murder, (3) that the trial court erred when it failed to give an accomplice-witness instruction, (4) that the evidence does not corroborate the testimony of the accomplice witness, and (5) that there is insufficient evidence to support the jury's deadly weapon finding. We will affirm the trial court's judgment of conviction.

---

[1]*See* TEX. PENAL CODE ANN. § 15.01.

[2]*See* TEX. PENAL CODE ANN. § 19.02(b)(1). Briggs was sentenced to twenty years' imprisonment for attempted murder.

[3]*See* TEX. PENAL CODE ANN. § 30.02(a)(1), (d)(2). Briggs was sentenced to ten years' imprisonment for burglary of a habitation with intent to commit aggravated assault.

[4]*See* TEX. PENAL CODE ANN. § 71.02(a) (Supp.). Briggs was sentenced to forty-five years' imprisonment for engaging in organized criminal activity.

[5]In his appeal in our cause number 06-22-00057-CR, Briggs appeals his conviction for burglary of a habitation with intent to commit aggravated assault, and in his appeal in our cause number 06-22-00058-CR, Briggs appeals his conviction for engaging in organized criminal activity.

We set forth the evidence introduced at trial in our opinion addressing the appeal of Brigg's conviction for engaging in organized criminal activity, our cause number 06-22-00058-CR, released the same date as this opinion. Therefore, we will not repeat them in this opinion.

## I.      Sufficient Evidence Supported the Jury's Verdict

In his first issue, Briggs contends that there was insufficient evidence to support the jury's verdict that he was guilty of attempted murder. He points out that no witness testified or contended that he shot Johnnie. He argues that there was no evidence upon which the jury could find that he had a specific intent to kill Johnnie and that there was no evidence to support a finding that he had a plan to kill Johnnie or that he knew of a plan to kill or harm Johnnie or to commit another felony.

### A.      Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)). "Our rigorous legal sufficiency review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

In our review, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). It is not required that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Paroline v. State*, 532 S.W.3d 491, 498 (Tex. App.—Texarkana 2017, no pet.) (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004))). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Williamson*, 589 S.W.3d at 297–98 (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part by* 544 S.W.3d 844 (Tex. Crim. App. 2018)).

4

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* (second alteration in original) (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

### B.    Analysis

#### 1.    Primary Actor Liability

Briggs was charged with the attempted murder of Johnnie. Because the evidence supported the theory that Briggs might be liable as a party, the court's charge included instructions that allowed the jury to convict Briggs either as a primary actor or as a party.[6] In order to convict Briggs of attempted murder of Johnnie as a primary actor, the State had to show, beyond a reasonable doubt, that Briggs (1) had the specific intent to commit the murder by killing Johnnie and (2) did an act beyond mere preparation that tended but failed to effect Johnnie's killing. *See* TEX. PENAL CODE ANN. § 15.01(a); *Swenson v. State*, 654 S.W.3d 144, 149 (Tex. App.—Texarkana 2022, pet. granted). A person commits murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1).

"To constitute an attempt, an act can, but need not, be the 'last proximate act' before the intended crime is effected." *Swenson*, 654 S.W.3d at 150 (quoting *McCravy v. State*, 642

---

[6]*See Tate v. State*, 811 S.W.2d 607, 607 n.3 (Tex. Crim. App. 1991) ("[I]f the evidence supports a charge on the law of parties, the court may charge on the law of parties even though there is no such allegation in the indictment or information.").

S.W.2d 450, 460 (Tex. Crim. App. 1980); *Cody v. State*, 605 S.W.2d 271, 273 (Tex. Crim. App. [Panel Op.] 1980)).  The question is "whether the [defendant]'s conduct caused him to cross the 'imaginary line,' which separates 'mere preparatory conduct,' which is usually non-criminal, from 'an act which tends to effect the commission of the offense,' which is always criminal conduct."  *Id.* (quoting *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex. Crim. App. 1984)).

> The indictment alleged that,
>
>> on or about July 21, 2017, in Fannin County, Texas, and before the presentment of this indictment, **CHARLES WADE BRIGGS**, Defendant, did then and there, with the specific intent to commit the offense of Murder of Johnnie Jones, do an act, namely conspired with others to plan and carry out the shooting of Johnnie Jones, and travel to the residence of Johnnie Jones, entered the residence without permission and shot Johnnie Jones in the head with a firearm, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

Although the indictment alleged several preparatory acts, the only act alleged that tended, but failed, to effect the killing of Johnnie was that Briggs "shot Johnnie Jones in the head with a firearm."  *See, e.g.*, *Swenson*, 654 S.W.3d at 152–53 (concluding that to sustain a conviction for an attempted crime against a person requires showing of "(1) striking-distance proximity to the intended victim," (2) "possession of needed resources to attack the intended victim," and (3) the "act of taking a weapon in hand and positioning or moving it in the direction of the intended victim"); *Hart v. State*, 581 S.W.2d 675, 678 (Tex. Crim. App. [Panel Op.] 1979) ("While simple acquisition and possession of a weapon would, in most situations, be preparation, putting that weapon to use to inflict injuries clearly goes beyond preparation.").

The State showed that someone shot Johnnie in the head at point-blank range, and that act could have caused the death of Johnnie.  That evidence demonstrated that the person who shot

6

Johnnie had the specific intent to kill him and that the person committed an act that tended, but failed, to effect the killing of Johnnie. *See Ex parte Thompson*, 179 S.W.3d 549, 556 n.18 (Tex. Crim. App. 2005) (orig. proceeding) ("[P]ointing a loaded gun at someone and shooting it toward that person at close range demonstrates an intent to kill."). However, the State never established who shot Johnnie. No witness positively identified the shooter, and the evidence showed that there were at least two, and as many as five, persons near Johnnie when he was shot. Further, there was testimony that the persons involved prepared multiple firearms before they left for Johnnie's house.

"The jury is permitted to draw reasonable inferences from the evidence adduced at trial." *Edwards v. State*, No. PD-0585-21, 2023 WL 2000060, at *3 (Tex. Crim. App. Feb. 15, 2023) (citing *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020)). "However, 'juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 15).

Although there was testimony that placed Briggs in the house and near Johnnie at the time he was shot, because there was evidence of multiple persons near Johnnie and possibly multiple firearms present, a conclusion that Briggs shot Johnnie would be based on mere speculation. Because there was no evidence establishing that Briggs shot Johnnie, we find that the evidence was insufficient to support a finding that Briggs attempted to murder Johnnie under a primary actor theory of liability.

7

### 2.    Party Liability

Although the evidence was insufficient to convict Briggs as the primary actor, the State tried the case, and the jury was charged, on the alternative theory that Briggs was liable as a party.  Under that theory, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both."  TEX. PENAL CODE ANN. § 7.01.  As applicable to this case, a person is criminally responsible for an offense committed by another person if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."  TEX. PENAL CODE ANN. § 7.02(a)(2).  "The words 'acting with intent to promote or assist the commission of the offense' clearly mean, at a minimum, that a defendant must act intentionally with respect to the result elements of a result-oriented offense."  *Nava v. State*, 415 S.W.3d 289, 298–99 (Tex. Crim. App. 2013).  "Murder is a 'result of conduct' offense, which means that the culpable mental state relates to the result of the conduct, i.e., the causing of the death."  *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003).  As a result, for the offense of attempted murder, the intent to promote or assist includes not only the commission of the act that tends but fails to effect the offense of murder, "but also the result of . . . murder—the death of an individual."  *Nava*, 415 S.W.3d at 300.

To prove party liability, "[t]he necessary specific intent can be proven through circumstantial evidence, and we may rely on events that took place before, during, or after the commission of the offense."  *Cary v. State*, 507 S.W.3d 750, 758 (Tex. Crim. App. 2016) (citing *Wygal v. State*, 555 S.W.2d 465 (Tex. Crim. App. 1977)).  "The jury may infer the requisite

8

mental state from (1) the acts, words, and conduct of the defendant, (2) the extent of the injuries to the victim, (3) the method used to produce the injuries, and (4) the relative size and strength of the parties." *Rhymes v. State*, 536 S.W.3d 85, 95 (Tex. App.—Texarkana 2017, pet. ref'd) (citing *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)). Further, "the jury may . . . infer intent from any facts in evidence which it determines prove[] the existence of [an] intent to kill, such as the use of a deadly weapon." *Id.* (quoting *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003)). However, while "Section 7.02(a)(2) requires evidence that the defendant intended commission of the crime and did something to help the other to commit it; it does not require evidence of the other person's intent." *Johnson v. State*, 560 S.W.3d 224, 230 (Tex. Crim. App. 2018).

"In determining whether an appellant is a party to an offense, we may consider 'events before, during, and after the commission of the offense.'" *Rhymes*, 536 S.W.3d at 94 (quoting *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012)). We may also consider circumstantial evidence to determine party status. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996)). "Without evidence of intentional participation by the accused, an accused may not be convicted under the law of parties." *Cary*, 507 S.W.3d at 758 (citing *Acy v. State*, 618 S.W.2d 362 (Tex. Crim. App. [Panel Op.] 1981)). For that reason, "mere presence of a person at the scene of a crime, or even flight from the scene, without more, is insufficient to support a conviction as a party to the offense." *Gross*, 380 S.W.3d at 186.

9

In this case, the evidence, construed in the light most favorable to the jury's verdict, showed that the night before the attack on Johnnie, Briggs called him and threatened to send someone over to take care of him. The next day, Briggs called Shane, whom Briggs knew to be in a violent biker gang, and Shane met him at his house within hours of the call, along with several fellow gang members. After Shane and his friends arrived, they conversed with Briggs and Josh in the driveway, where they prepared their weapons, including several firearms. The group then proceeded to Johnnie's house and used Josh, who was familiar to Gina and Johnnie, to gain entrance to the house. After Josh gained entry, Shane, Briggs, and other members of the gang incapacitated Gina and rushed to attack Johnnie at the back of the house. According to Johnnie, three men attacked him, one of whom he identified as Josh's dad. Johnnie testified that Josh's dad said, "[W]hen I called you . . . I told you I would send someone to take care of you" immediately before Johnnie was shot point-blank in the back of his head.

Afterward, Briggs emphasized to his family that Shane was not kidding when he threatened to kill them if they disclosed his involvement and immediately formulated an alibi that the family was instructed to use. Over the next three years, when the incident came up in conversation, Briggs bragged that they had gotten away with it. And when Sapphire threatened to leave Josh, he reminded her that she knew too much, told her that they knew how to kill a person, and said that the same could happen to her.

Based on the evidence of Brigg's threats, his soliciting of assistance of a violent gang, his active participation in the events leading up to, during, and after the shooting, and the use of a deadly weapon fired point-blank into the back of Johnnie's head, the jury could reasonably infer

10

that Briggs had both the intent to assist or promote the murder of Johnnie and the intent to cause the death of Johnnie. This same evidence showed that Briggs was an active participant in the planning, preparation, and execution of the attempted murder of Johnnie. For those reasons, we find that sufficient evidence supported the jury's finding that Briggs was a party to the attempted murder.[7] We overrule this issue.

## II.     No Jury-Charge Error Regarding Party Liability

In his next issue, Briggs asserts that he was egregiously harmed by the trial court's charge on party liability. He argues that the three application paragraphs on party liability allowed the jury to convict him without finding that anyone had a specific intent to commit murder.

The court's charge contained three identical paragraphs, except for the names of the primary actor,[8] that immediately followed the application paragraph regarding Briggs's liability as a primary actor.[9] The paragraphs stated:

---

[7]Although the State also asserted the conspiracy theory of party liability, *see* TEX. PENAL CODE ANN. § 7.02(b), because we find that there was sufficient evidence to support the jury's verdict under the promote-or-assist theory of party liability, we do not address the evidence supporting that theory.

[8]The primary actors named in the three paragraphs were "JOSH WADE BRIGGS," "DALLAS SHANE BRIGGS," and "AN INDIVIDUAL WHOSE IDENITY [sic] IS UNKNOWN."

[9]Briggs does not complain about the application paragraph regarding Briggs's liability as a primary actor. That paragraph stated:

> Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about the 21st day of July 2017, in Fannin County, Texas, the defendant, CHARLES WADE BRIGGS, did then and there, with the specific intent to commit the offense of Murder of Johnnie Jones, do an act, namely conspired with others to plan and carry out the shooting of Johnnie Jones, and travel to the residence of Johnnie Jones, entered the residence without permission and shot Johnnie Jones in the head with a firearm, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended, then you will find the defendant guilty of Attempt to Commit Murder, as charged in the indictment, and so say by your verdict.

Or, if you find from the evidence beyond a reasonable doubt that on or about July 21, 2017 in Fannin County, Texas, [Primary Actor], did then and there, with intent to commit the felony offense of Attempt to Commit Murder, without the effective consent of Johnnie Jones, the owner thereof, and that CHARLES WADE BRIGGS, then and there, acting with intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid [Primary Actor], to commit the offense, if any, by the defendant's own actions and conduct during the commission of said offense, if any, you will find the defendant guilty of Attempt to Commit Murder, as charged in the indictment.

## A.    Standard of Review

"We employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.)).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 36.13). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Id.* (quoting *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd)). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id.* (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)). "In examining the charge for possible error, reviewing courts 'must examine the charge as a whole instead of a series of isolated and unrelated statements.'"

*Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (quoting *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995)).

**B. Analysis**

In this case, the jury charge instructed the jury on the law of the parties in accordance with Section 7.02(a)(2) of the Texas Penal Code. The charge instructed, "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *See* TEX. PENAL CODE ANN. § 7.02(a)(2). The abstract portion also defined the offense of murder as "intentionally or knowingly caus[ing] the death of an individual; or intend[ing] to cause serious bodily injury and commit[ting] an act clearly dangerous to human life that causes the death of an individual." It also instructed the jury that "[a] person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result."[10]

The application section, entitled "Application of Law to the Facts—Attempt to Commit Murder," contained a paragraph that set forth the specific facts the jury was required to find to hold Briggs guilty of attempted murder as a primary party. Those required findings included that Briggs had "the specific intent to commit the offense of Murder of Johnnie Jones" and that he did "an act, namely. . . shot Johnnie Jones in the head with a firearm, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended." If the jury found those facts, they were instructed to "find the defendant guilty of Attempt to

---

[10]Briggs does not complain of any error in this instruction.

Commit Murder, as charged in the indictment." This paragraph appeared immediately above the paragraphs that Briggs asserts constituted jury charge error.

The Texas Court of Criminal Appeals has held,

When a definition or instruction on a theory of law—such as the law of parties— is given in the abstract portion of the charge, the application paragraph must

(1)     specify "all of the conditions to be met before a conviction under such theory is authorized";

(2)     authorize "a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers"; or

(3)     "contain[] some logically consistent combination of such paragraphs."

*Vasquez*, 389 S.W.3d at 367 (alteration in original) (quoting *Plata v. State*, 926 S.W.2d 300, 304 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)).

Briggs complains that the application paragraphs concerning party liability allowed the jury to convict him without finding that anyone had a specific intent to commit murder. However, those paragraphs specifically required the jury to find that Briggs "act[ed] with intent to promote or assist the commission of the offense," which was identified as attempt to commit murder. The definitions in the abstract provided that a person commits murder when he intentionally—it is his conscious objective or desire to—causes the death of an individual. This, along with the immediately preceding application paragraph, told the jury that in order to find Briggs guilty of attempted murder, it had to find that he had the specific intent to cause the death

14

of Johnnie and that he intended to promote or assist the other identified persons in doing so.[11] *See Nava*, 415 S.W.3d at 299–300.

Because the jury charge, as a whole, adequately instructed the jury what was required to convict Briggs of attempt to commit murder as a party, we find that the jury charge was not defective. We overrule this issue.

## III. Briggs Was Not Egregiously Harmed by the Absence of An Accomplice-Witness Instruction

Briggs also asserts that the trial court erred when it failed to *sua sponte* instruct the jury regarding the law on accomplice witnesses. Briggs argues that Josh was an accomplice as a matter of law, which required the trial court to give an appropriate accomplice-witness instruction, and that he was egregiously harmed by the court's failure to do so.

### A. The Law Regarding Accomplice Witnesses

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14. This longstanding rule of Texas law "reflects 'a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid

---

[11]To the extent Briggs contends that the charge allowed the jury to convict him without finding that the named primary actors had the intent to cause the death of Johnnie, a conviction based on party liability does not require that finding. *See Johnson v. State*, 560 S.W.3d 224, 230 (Tex. Crim. App. 2018) ("Section 7.02(a)(2) requires evidence that the defendant intended commission of the crime and did something to help the other to commit it; it does not require evidence of the other person's intent.").

15

punishment or shift blame to another person.'" *Zamora v. State*, 411 S.W.3d 504, 509–10 (Tex. Crim. App. 2013) (quoting *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998)).

"Because the rule requires corroboration of accomplice-witness testimony before a conviction can stand, the jury must be instructed accordingly." *Id.* at 510. When a witness is an accomplice as a matter of law, "the trial court affirmatively instructs the jury that the witness is an accomplice and that his testimony must be corroborated." *Id.* at 510 (citing *Druery v. State*, 225 S.W.3d 491, 498–99 (Tex. Crim. App. 2007)). "A witness is an accomplice as a matter of law when the witness has been charged with the same offense as the defendant or a lesser-included offense, or 'when the evidence clearly shows that the witness could have been so charged.'" *Id.* (quoting *Druery*, 225 S.W.3d at 499). Further, because Article 38.14 is the law applicable to the case, the trial court must give an accomplice-witness instruction *sua sponte* if the evidence shows that a witness is an accomplice. *See id.* at 513–14.

The evidence in this case showed that Josh was charged with the same offense. However, his testimony at Briggs's trial exonerated, rather than implicated, Briggs. As a result, there is a question whether this testimony was subject to Article 38.14 since the basis for requiring corroboration is because accomplices who implicate others may have a reason to lie, such as leniency for themselves, and therefore, their testimony should be viewed with caution. Nevertheless, the State has conceded that the trial court erred in failing to give an accomplice-witness instruction. For that reason, and because neither party has briefed whether the portions of Josh's testimony from his own trial that were read at Briggs's and that somewhat implicated

16

Briggs would be subject to Article 38.14, we assume, without deciding, that the trial court erred in failing to *sua sponte* include an accomplice-witness instruction in its charge.

### B.      Standard of Review

Because Briggs did not object to the lack of an accomplice-witness instruction at trial, we will reverse "only in the event that the record demonstrates that the error resulted in egregious harm." *Casanova v. State*, 383 S.W.3d 530, 533 (Tex. Crim. App. 2012) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).  When the trial court fails to give an accomplice-witness instruction, "non-accomplice evidence can render harmless a failure to submit an accomplice witness instruction by fulfilling the purpose an accomplice witness instruction is designed to serve." *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). However, we find egregious harm when "the jurors would have found the corroborating evidence so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Casanova*, 383 S.W.3d at 533 (quoting *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)).

Article 38.14 requires only the accomplice's in-court testimony to be corroborated. *Bingham v. State*, 913 S.W.2d 208, 210 (Tex. Crim. App. 1995).  As a result, an accomplice witness's out-of-court statements are not subject to the Article 38.14 corroboration requirement. *See Martinez v. State*, No. 06-20-00031-CR, 2021 WL 5263697, at *3–4 (Tex. App.—Texarkana Nov. 12, 2021, no pet.) (mem. op., not designated for publication) (considering accomplice witness's out-of-court statements to investigator in determining whether there was sufficient corroborating evidence connecting the defendant with the commission of the offense).

17

## C. Analysis

In evaluating the strength of the corroborating evidence, "we eliminate the accomplice-witness testimony from our consideration and examine the non-accomplice evidence 'to ascertain if there is evidence which tends to connect the accused with the commission of the offense.'" *Rhymes*, 536 S.W.3d at 92 (quoting *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997)). "The non-accomplice evidence need not establish guilt beyond a reasonable doubt or directly link the defendant to the crime." *Id.* at 93 (citing *Hernandez*, 939 S.W.2d at 176). "Rather, '[t]he accomplice witness rule is satisfied if there is *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment.'" *Id.* (quoting *Hernandez*, 939 S.W.2d at 176).

By itself, the defendant's presence at the scene of the crime is not sufficient to corroborate an accomplice's testimony. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). That said, "evidence that an accused was in the company of the accomplice close to the time of the offense, coupled with other suspicious circumstances, may tend to connect the accused to the offense." *Gill v. State*, 873 S.W.2d 45, 49 (Tex. Crim. App. 1994). "Moreover, while evidence that merely shows only motive or opportunity to commit the crime is, by itself, insufficient to corroborate the accomplice-witness testimony, it may 'be considered in connection with other evidence tending to connect the accused with the crime.'" *Martinez*, 2021 WL 5263697, at *2 (quoting *Reed v. State*, 744 S.W.2d 112, 127 (Tex. Crim. App. 1988)). Also, "[i]n determining the strength of the particular item of non[-]accomplice evidence, we must examine (1) its reliability or believability, and (2) the strength of its tendency to connect the

18

defendant to the crime." *Rhymes*, 536 S.W.3d at 93 (first alteration in original) (quoting *Hall v.*

*State*, 161 S.W.3d 142, 150 (Tex. App.—Texarkana 2005, pet. ref'd)).

In this case, the non-accomplice evidence consisted of:

(1)  telephone records that showed Briggs's cell phone called Gina's cell phone the night before the attack;

(2)  Gina's testimony that a person identifying himself as Josh's dad called Johnnie the night before the attack;

(3)  Johnnie's testimony that a person identifying himself as Josh's dad called him before the attack and threatened to send someone to take care of him because he thought Johnnie sold Josh drugs;

(4)  telephone records that showed Briggs used his cell phone to call Shane's cell phone several times the evening of, but prior to, the attack;

(5)  Oliver's testimony that Shane was the president of a violent biker gang;

(6)  Sapphire's testimony that Shane and several of his gang members met Briggs and Josh at Briggs's house, that they discussed the situation, and that they prepared their weapons, including guns, before leaving together;

(7)  Sapphire's testimony that, after the men returned, Shane told them what happened and threatened them and that Briggs said Shane was not kidding and fabricated an alibi for them to use;

(8)  Sapphire's testimony that Josh told her that he was instructed to hold the lady down in the front room, that Shane and Briggs went to the back room, that a couple of other people came through the back door, and that Johnnie was then shot in the head;

(9)  Johnnie's testimony that Josh's dad was among the men who attacked him and reminded him of his prior threat shortly before Johnnie was shot;

(10) Sapphire's testimony that Briggs stated on several occasions over the next few years that they got away with it and that Briggs told her they knew how to kill a person and it could happen to her; and

19

(11)    Logan's testimony that Josh told her that Briggs, Shane, he, and a few other guys went down the road to a man's house, that he had to hold down the girl, that the others beat the guy with a gun, and that Briggs made him do it.

We find that this evidence shows not only that Briggs had a motive to commit the offense, but that he actively participated in the planning and execution of it. We also find that the evidence is reliable and tends to connect Briggs to the attempted murder. As a result, we hold that the trial court's error, if any, was harmless. We overrule this issue.[12]

## IV.    Sufficient Evidence Supported the Deadly Weapon Finding

In his final issue, Briggs challenges the sufficiency of the evidence supporting the jury's finding that a deadly weapon was used or exhibited during the commission of the offense. Briggs argues that there is no evidence that he used a firearm to commit the offense and no evidence that he was aware a firearm would be used to harm Johnnie.

To obtain a deadly weapon finding, the State must show, beyond a reasonable doubt, that: "(1) the object meets the statutory definition of a dangerous weapon; (2) the deadly weapon was used or exhibited 'during the transaction from which' the felony conviction was obtained; and (3) that other people were put in actual danger." *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (citations omitted). Also, when "the deadly weapon finding is against [the defendant], as a party to the offense, the State had to prove [he] knew a deadly weapon would be used or exhibited by" the primary actor during either the commission of the offense or the

[12]In a separate issue, Briggs asserts that the corroboration evidence was insufficient to connect him to the commission of the offense. For the reasons previously stated, we find that the corroboration evidence was sufficient to tend to connect him to the commission of the offense. We overrule this issue.

immediate flight therefrom. *Dowdle v. State*, 11 S.W.3d 233, 235 (Tex. Crim. App. 2000); *see* TEX. CODE CRIM. PROC. ANN. art. 42A.054(b)–(d) (Supp.).

A firearm is a deadly weapon per se. TEX. PENAL CODE ANN. § 1.07(a)(17)(A). Also, the evidence showed, and Briggs does not contest, that a firearm was used in the commission of the offense and that Johnnie was put in actual danger. Construed in the light most favorable to the jury's findings, the evidence in this case shows (1) that Shane brought and exhibited a firearm when he came to Briggs's house, (2) that there were multiple firearms in possession of the persons gathered at Briggs's house, (3) that Briggs and Shane discussed the situation before leaving for Johnnie's house, (4) that Briggs was among the men who rushed into Johnnie's house and attacked him, and (5) that Briggs reminded Johnnie of his prior threat immediately before Johnnie was shot in the back of the head.

Based on this evidence, we find that any reasonable jury could infer that Briggs knew that a firearm would be used by the primary actor during the commission of the offense. As a result, we find that sufficient evidence supported the jury's deadly weapon finding. We overrule this issue.

## V.    Disposition

For the reasons stated, we affirm the trial court's judgment.


Scott E. Stevens
Chief Justice


Date Submitted:    January 27, 2023
Date Decided:      April 21, 2023

Do Not Publish